Robert A. BURKA, Appellant,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
et al., Appellees.

No. 97–5150.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 6, 1998.

Decided May 8, 1998.

Robert A. Burka, appearing pro se, argued the cause for appellant, with whom Lawrence M. Sung, was on the briefs.

Michael J. Ryan, Assistant United States Attorney, argued the cause for appellees, with whom Wilma A. Lewis, United States Attorney, Mark E. Nagle and R. Craig Lawrence, Assistant United States Attorneys, were on the briefs.

Before: WALD, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Opinion concurring specially filed by Circuit Judge WALD.

Concurring opinion filed by Circuit Judge RANDOLPH.

WALD, Circuit Judge:

In 1992, Robert A. Burka, a *pro se* attorney-litigant, filed suit against the U.S. Department of Health and Human Services ("HHS") under the Freedom of Information Act ("FOIA") seeking release of survey responses from the Community Intervention Trial for Smoking Cessation, a research project supported by the National Cancer Insti-

tute. After nearly five years of litigation that culminated in a reversal by this court of a district court holding in favor of HHS and a remand to the district court for further proceedings, HHS disclosed the information to Burka pursuant to a consent order and judgment. Burka then moved for attorney's fees. The district court denied the motion on the grounds that Burka was a *pro se* attorney-litigant and therefore was not eligible for attorney's fees under FOIA. Burka now appeals from the judgment of the district court. We affirm.

## I. BACKGROUND

In November 1992, Burka commenced this action under the Freedom of Information Act, 5 U.S.C. § 552, to compel HHS to disclose paper questionnaires and electromagnetic data tapes containing survey responses from the National Cancer Institute's Community Intervention Trial for Smoking Cessation. The parties cross-moved for summary judgment. On December 13, 1993, the district court held that the information sought by Burka was exempt from disclosure under FOIA Exemption 5 and therefore granted HHS's motion for summary judgment.

Burka appealed. He then sought to supplement the record. The case was remanded to the district court to consider the request. *See Burka v. United States Dep't of Health & Human Services*, No. 94–5003, 1994 WL 315403 (D.C.Cir. June 15, 1994) (per curiam). The district court granted the motion but reaffirmed its earlier decision that the material could be withheld by HHS under FOIA Exemption 5. Burka again appealed. On July 2, 1996, this court reversed the district court's grant of summary judgment for HHS on the grounds that the material sought by Burka did not fall under the protection of Exemption 5, and the case was remanded for further proceedings. *See Burka v. United States Dep't of Health & Human Services*, 87 F.3d 508 (D.C.Cir.1996). After this court denied a motion for rehearing in banc filed on January 6, 1997, HHS disclosed to Burka the information he sought pursuant to a consent order and judgment.

Burka then moved for an award of attorney's fees under FOIA, 5 U.S.C. § 552(a)(4)(E). On March 21, 1997, the district court issued an order denying Burka's motion. *See Burka v. United States Dep't of Health & Human Services*, No. 92–2636 (D.D.C. Mar. 20, 1997). Burka appealed.

## II. ANALYSIS

A. Pro Se *Attorneys Are Not Entitled to Attorney's Fees Under the Fee–Shifting Provisions of FOIA*

■ Burka is seeking an award of attorney's fees for his work in this case. He argues that his *pro se* status should not be a bar to such an award under FOIA because controlling precedent in this circuit provides that *pro se* attorney-litigants who substantially prevail in their actions may recover attorney's fees. HHS responds that Burka is not eligible for an award because the reasoning of the Supreme Court in *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), precluded awards of fees to persons who appear *pro se* in FOIA cases, whether or not they are attorneys.

■ The Freedom of Information Act provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *See* 5 U.S.C. § 552(a)(4)(E)(1994). To be entitled to such an award, a litigant must first establish eligibility by showing that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released. *See Chesapeake Bay Foundation, Inc. v. United States Dep't of Agriculture*, 11 F.3d 211, 215–16 (D.C.Cir. 1993), *cert. denied*, 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). Second, a litigant must show that it is entitled to fees under four criteria that the court weighs in determining whether attorney's fees are appropriate: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for with-

holding requested information." 11 F.3d at 216 (citations omitted).

For many years, it was settled law in this circuit that attorneys who prevailed in FOIA actions brought on their own behalf were eligible to obtain attorney's fees. Indeed, in *Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C.Cir. 1977), this court specifically declared that "[i]n light of the legislative history of section 552(a)(4)(E), a complainant, who is otherwise eligible under that section for an award of attorney fees, should not be denied those fees simply because he happens to be an attorney." *Id.* at 1366. The court thus held that an attorney representing herself *pro se* in a FOIA case could obtain an award of attorney's fees as long as she met the requirements of eligibility and entitlement.

In 1991, however, the Supreme Court ruled that an attorney who represented himself in a successful civil rights case could not recover attorney's fees under 42 U.S.C. § 1988. *See Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). The Court noted that the petitioner in that case had handled his professional responsibilities competently. Nonetheless, the Court found that the word "attorney" in the fee provision "assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988." *Id.* at 435–36, 111 S.Ct. at 1437 (footnotes omitted). The Court explained that the specific purpose of the fee provision was to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id.* (footnote omitted). Allowing an attorney who represents himself to obtain attorney's fees, the Court explained, does not further this goal. Indeed, an attorney who appears *pro se* "is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.* at 437, 111 S.Ct. at 1438. Therefore, the Court concluded, "[t]he statutory policy of furthering the successful prose-

cution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438, 111 S.Ct. at 1438.

In the wake of the Court's decision in *Kay*, lower courts have held that several different fee-shifting statutes, including FOIA, preclude awards of fees to all persons who appear *pro se*. Most notably, in 1993, this court held that based on *Kay*, a *pro se* nonattorney plaintiff who prevailed in a FOIA action could not obtain attorney's fees under section 552(a)(4)(E). *See Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C.Cir.), *cert. denied*, 510 U.S. 996, 114 S.Ct. 559, 126 L.Ed.2d 460 (1993). In *Benavides v. Bureau of Prisons*, we noted that "[t]he law in this circuit, until today, has been that *pro se* nonattorney litigants are eligible for reasonable attorney fees under FOIA in cases in which they have substantially prevailed in claims against the Government." *Id.* at 258–59 (citation omitted). Nonetheless, we explained, "[i]n light of the Supreme Court's decision in *Kay v. Ehrler* ... we are now constrained to change our position." *Id.* at 259. While recognizing that *Kay* arose in the context of a claim for fees under 42 U.S.C. § 1988 rather than under FOIA, we held that *Kay* was binding on the issue of attorney's fees because the Supreme Court had implicitly rejected a distinction between fee claims arising under section 1988 and FOIA. *Id.* at 259; *see* 499 U.S. at 435 n. 4, 111 S.Ct. at 1436 n. 4.

Although in *Benavides* we explicitly reserved the issue of whether *pro se* plaintiffs who are attorneys must suffer a similar fate, *see* 993 F.2d at 260, *Kay* itself militates against any distinction between fee claims under section 1988 and under FOIA and overwhelmingly argues in favor of a conclusion that fees are not available to *pro se* attorneys for claims filed under FOIA. As we noted in *Benavides, Kay* implicitly rejected a distinction between fee claims arising under section 1988 and FOIA by referring with approval to *Falcone v. IRS*, 714 F.2d 646 (6th Cir.1983), *cert. denied*, 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984). In *Falcone*, the Sixth Circuit refused to award attorney's fees to a *pro se* attorney in a

successful action under FOIA. The *Falcone* court had concluded that attorney's fees were not appropriate because the award was intended " 'to relieve plaintiffs with legitimate claims of the burden of legal costs' and 'to encourage potential claimants to seek legal advice before commencing litigation.' " *Kay*, 499 U.S. at 435 n. 4, 111 S.Ct. at 1436 n. 4 (quoting *Falcone*, 714 F.2d at 647). As the *Kay* Court noted, the Sixth Circuit in *Falcone* relied on the fact that although a *pro se* attorney possesses legal expertise, he is unlikely to have the " 'detached and objective perspective' necessary to fulfill the aims of the Act." *Id.* (quoting *Falcone*, 714 F.2d at 647 (citations omitted)) (internal quotation marks omitted). It is obvious from the lengthy discussion of *Falcone* in *Kay* that the Supreme Court intended its ruling to apply beyond section 1988 cases to other similar fee-shifting statutes, particularly the one in FOIA. It is, in short, impossible to conclude otherwise than that *pro se* litigants who are attorneys are not entitled to attorney's fees under FOIA.

Virtually all other courts that have considered this issue since *Kay* have reached a similar conclusion. In *Ray v. United States Department of Justice*, the Eleventh Circuit concluded that because the policies behind section 1988 and FOIA are the same, "the principles announced in *Kay* apply with equal force in this case to preclude the award of attorney's fees Ray seeks for his own work." 87 F.3d 1250, 1252 (11th Cir.1996).

Similarly, *Manos v. United States Department of the Air Force*, 829 F.Supp. 1191 (N.D.Cal.1993), held that an attorney who is a *pro se* plaintiff and who has substantially prevailed on a FOIA claim cannot be awarded attorney's fees under FOIA. The court noted that "[b]ecause substantially similar policies underlie the attorneys' fees provisions of FOIA and section 1988, *Kay* strongly supports a denial of fees under FOIA to *pro se* attorney plaintiffs." *Id.* at 1193. The court further reasoned that "it does not advance the goals of FOIA's fee provision to allow a litigant to recover for a non-performed service or to be compensated where no fee has been paid." *Id.* (citations omitted). An award of attorney's fees was in-

tended to relieve plaintiffs of the burden of legal costs, not reward successful claimants or penalize the government. The court also noted that granting a *pro se* attorney fees "when a lay *pro se* FOIA litigant who also substantially prevailed in her action would be denied fees does not in any discernable way advance the policy behind the FOIA attorneys' fees provision." *Id.* at 1194. Thus, the court concluded, "fairness and sound policy resist a finding that an attorney representing herself is more entitled to a fee under FOIA than a lay person representing herself." *Id.*

The District Court for the Northern District of Illinois arrived at the same conclusion in *Whalen v. Internal Revenue Service*, 1993 WL 532506 (N.D.Ill. Dec. 20, 1993). There, the court held that there was "no satisfactory distinction between *pro se* FOIA litigants who are lawyers and those who are not for the purpose of awarding fees." *Id.* at *11. Thus, it concluded that "[a]pplying the rationale of the Court in *Kay* ... [the attorney-litigant] is not entitled to recover fees for his own efforts in litigating his FOIA complaint." *Id.*

■ There is only one post-*Kay* case in which a court has held that *pro se* litigants who are attorneys are entitled to attorney's fees under FOIA.[1] In *State of Texas v. Interstate Commerce Commission*, 935 F.2d 728 (5th Cir.1991), which was decided three months after *Kay*, the Fifth Circuit held that "if a FOIA plaintiff has actually and reasonably incurred legal fees—that is, a lawyer has handled his case, even if the lawyer is the plaintiff himself—and if the plaintiff substantially prevailed, he may recover reasonable attorneys fees from the federal government, provided that the court finds that the four discretionary criteria are satisfied." *Id.* at 731–32 (footnote omitted). In arriving at this conclusion, however, the Fifth Circuit did not discuss the impact of the Supreme Court's decision in *Kay*; indeed, it did not mention the case. Given that in *Benavides*, 993 F.2d at 259–60, we acknowledged that *Kay* is controlling on issues relating to the

fee-shifting provisions of FOIA, the Fifth Circuit decision is unpersuasive. Thus, we conclude that the district court was correct to decide that *pro se* attorney-litigants are not entitled to attorney's fees under the fee-shifting provisions of FOIA.

**B. *Burka's Representation of an Undisclosed Client Does Not Render Him Eligible for Attorney's Fees***

■ Burka claims that the reasons for denying attorney's fees to a *pro se* attorney are not applicable to him because "[h]is formal status as a *pro se* litigant ... was merely technical." Brief of Appellant at 21. At all times during the litigation, Burka explains, he was representing an undisclosed client, a fact of which the district judge and the government were aware. He further claims that he has been compensated by the undisclosed client for his services pursuant to a retention agreement and that any award of attorney's fees or costs in this case will be turned over to his undisclosed client. *See id.* at 8. He therefore argues that he was not the real party-in-interest in this litigation but rather an attorney for an unnamed plaintiff and thus the court is not bound by the case law governing awards of attorney's fees to *pro se* attorneys. Presented with these arguments, the district court held that since every action must be prosecuted in the name of the real party-in-interest and "[s]ince Burka brought this lawsuit in his own name, he should be estopped from arguing now that the real party-in-interest was someone else." *Burka,* No. 92–11 2636, at 4 [J.A. 15]. We affirm the district court's holding.

The Federal Rules of Civil Procedure require that "[e]very action shall be prosecuted in name of the real party in interest." FED. R.CIV.P. 17(a) (1997). Burka chose to bring the case in his own name and to maintain the case in his own name throughout the litigation. Indeed, Burka has at all times been the only named party in this case. A FOIA request can be made by "any person." 5 U.S.C. § 552(a)(3). As a result, Burka had standing to bring this suit when his FOIA

---

1. The D.C. district court awarded attorney's fees in a FOIA suit to a law firm litigating in its own name in *Wiley, Rein & Fielding v. United States Department of Commerce*, 793 F.Supp. 360 (D.D.C.1992). However, it appears that the issues raised here were not raised by the parties in *Wiley, Rein & Fielding*, for the court simply awarded fees without discussion.

request was denied; he was not required to demonstrate that he had any particular need for the information. Therefore Burka, not his undisclosed client, is the real party-in-interest to this suit. Any arrangements Burka had with a third party are legally irrelevant for the purposes of his FOIA request. They are equally irrelevant here. It is similarly of no consequence that Burka "could have" brought this suit on behalf of another third party; Burka has not done so.

Even absent the clear dictates of Rule 17, we would arrive at the same place. The dangers inherent in recognizing an "undisclosed" client as the real plaintiff are obvious. For instance, if the court cannot ascertain who is the real party-in-interest to a case, how can it apply claim preclusion to that party in any future litigation? How can a court apply sanctions to a party whose identity is undisclosed? How would a court determine for purposes of deciding if attorney's fees are merited whether a plaintiff is acting on behalf of the public interest, or whether the plaintiff will obtain commercial benefit from the disclosed information, or anything about the nature of the plaintiff's interest in the records if her identity is undisclosed?

Burka is not just the plaintiff in this case; he is also the only attorney to enter an appearance. He directed the litigation, argued on his own behalf in district court, and filed the briefs in district court as well as here. Thus, it appears incontrovertible that Burka has been both claimant and counsel. Accordingly, Burka is, by definition, a *pro se* attorney-litigant and thus is not eligible for attorney's fees. Burka's status as both attorney and litigant may be a "technicality," but it is a legally meaningful one and not to be ignored.

### C.  Burka's Co–Counsel Are Not Entitled to Attorney's Fees

█ Burka contends that even if he is ineligible for attorney's fees for his own work on this case, he is nonetheless eligible to recover fees for the services of his lawyer colleagues who worked on the lawsuit. HHS argues, in turn, that Burka is not eligible for attorney's fees for any work performed by colleagues at his law firm because there was no attorney-client relationship between them, his colleagues never entered an appearance in the case, and they worked under Burka's direction and control. The district court found that Burka was not entitled to attorney's fees for his colleagues' work. We agree.

Burka cites three cases in support of his argument that he is eligible to recover for the professional services rendered by his colleagues at his law firm, *Ray*, 87 F.3d 1250; *Lawrence v. Bowsher*, 931 F.2d 1579 (D.C.Cir.1991); and *Aronson v. United States Dep't of Housing & Urban Dev.*, 866 F.2d 1 (1st Cir.1989). In all three cases, the court awarded attorney's fees to a *pro se* attorney-litigant for the work of co-counsel. Yet, as the district court noted below, all three cases involved attorneys who were not affiliated with the litigant's law practice. As a result, these outside counsel, unlike the colleagues employed by Burka, enjoyed a genuine attorney-client relationship with the litigants, were situated to offer "independent" legal advice and assistance, and were presumably paid for their services by the attorney-litigants involved. This was not true here. Instead, Burka controlled the legal strategy and presentation, he was the only attorney to enter an appearance in the case, and his colleagues worked under his direction. These are material differences. As the Supreme Court noted in *Kay*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486, "the word 'attorney' assumes an agency relationship." *Id.* at 435–36, 111 S.Ct. at 1437 (footnote omitted). Such a relationship exists when an attorney-litigant's co-counsel are independent counsel hired by him to assist him in the case; it does not exist, however, where the counsel are simply colleagues at the litigant's law firm working under the litigant's direction. "Outside" counsel can serve as an "independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.* at 437, 111 S.Ct. at 1438. Again, this is

not true when the co-counsel work in the same firm and under the direction of the attorney-litigant. Burka's claim that his co-counsel were in fact working for an undisclosed client with whom they shared an attorney-client relationship is not relevant here for the same reasons it was irrelevant with regard to Burka's claim for attorney's fees for his own work in this case.

### III. Conclusion

For the foregoing reasons, we hold that a *pro se* attorney-litigant is not entitled to attorney's fees under FOIA, 5 U.S.C. § 552. We also hold that this rule applies even if the *pro se* attorney-litigant claims to in fact represent an undisclosed client. Finally, we hold that a *pro se* attorney-litigant is not entitled to an award of attorney's fees for work performed by other attorneys on the case where the other attorneys worked in the attorney-litigant's firm under the attorney-litigant's direction. The district court's decision denying Burka's motion for an award of attorney's fees is therefore

*Affirmed.*

WALD, Circuit Judge, concurring specially:

Judge Randolph raises questions in his concurrence about the legitimacy of considering "the public benefit derived from the case" in deciding when to award attorneys' fees in a FOIA case. I write briefly in reply.

It is reasonable for the court to consider the public benefit arising from the plaintiff's FOIA request in deciding whether to grant attorney's fees precisely because under the statute a plaintiff need not demonstrate any public benefit to obtain information through FOIA. In *LaSalle Extension University v. FTC*, 627 F.2d 481 (D.C.Cir.1980), we explained that "parties ... who have a sufficient private interest in the requested information do not need the additional incentive of recovering their fees and costs to induce them to pursue their request in the courts." *Id.* at 484. That, of course, includes those who have commercial interests in the infor-

mation sought. On the other hand, someone seeking information from the government may need at least the potential to cover costs if he acts as, in effect, "a private attorney general." *See* S.Rep. No. 93–854 (1974).

Judge Randolph asserts that judges cannot evaluate public benefit "objectively." But we make this kind of determination under other fee-shifting statutes all the time. *See, e.g., Metropolitan Washington Coalition for Clean Air v. District of Columbia*, 639 F.2d 802, 804 (D.C.Cir.1981) (explaining that under the citizen-suit provision of the Clean Air Act, courts are empowered to award fees "whenever such an award was deemed to be 'in the public interest' "); *Covington v. District of Columbia*, 57 F.3d 1101, 1108 (D.C.Cir.1995), *cert. denied*, 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996) (explaining that under the fee-shifting provision of 42 U.S.C. § 1988(b), when an attorney requests rates that are greater than those they normally charge, "the attorney must show that his or her custom of charging reduced rates is in fact attributable to 'public spiritedness' "); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (explaining that an exception to the so-called "American Rule" prohibiting fee-shifting in most cases is the "common fund exception," which "allows a court to award attorney's fees to a party whose litigation efforts directly benefit others"). In fact, the public interest inquiry is usually relatively simple. *See, e.g., LaSalle Extension University v. FTC*, 627 F.2d 481, 484 (D.C.Cir.1980) ("One goal [of the FOIA fee-shifting provision] ... is to encourage Freedom of Information Act suits that benefit the public interest. This objective is not furthered here ...."); *see also Summers v. DOJ*, 140 F.3d 1077, 1084 (D.C.Cir.1998) (Silberman, J., concurring) ("There can be *no doubt* that these documents as a group are of the very highest public interest.") (emphasis added). Indeed, it is not so readily apparent that the "substantial justification" test of EAJA that Judge Randolph espouses is that much more "objective" than the "public interest" test of FOIA.[1]

---

1. Moreover, the purposes of the fee-shifting provisions of EAJA and of FOIA are different;

"[s]imply put, the EAJA is not a broadly written fee-shifting statute which encourages meritorious

Judge Randolph also claims that "making the eligibility for a fee award turn on 'public benefit' ... is not tied to any language or policy of FOIA." Congress and every circuit to consider the issue would disagree. The requirement that the petitioner show some public benefit to obtain attorney's fees is deeply rooted in the legislative history of FOIA. The "multi-factor, no weights assigned, test" appeared in the original Senate version of FOIA. *See* S. 2543, 93rd Cong. (1974); S.REP. No. 93–854 (1974). Although the conference committee later eliminated the test's four criteria from the statute, the conference report indicates that Congress intended courts to consider such factors in exercising their discretion to award attorney's fees. *See* S. CONF. REP. No. 93–1200 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6288; Majority Opinion at 1288. Consistent with this congressional intent, we have for decades used them as guides to determining when attorney's fees are warranted. *See, e.g., Chesapeake Bay Foundation, Inc. v. United States Dep't of Agriculture*, 11 F.3d 211, 216 (D.C.Cir.1993), *cert. denied*, 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C.Cir.1992); *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1498 (D.C.Cir.1984). Other circuits have done the same. *See, e.g., Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93 (6th Cir.1996); *Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051 (5th Cir.1983); *Aviation Data Serv. v. FAA*, 687 F.2d 1319 (10th Cir.1982); *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir.1976). Absent some affirmative change of heart on the part of Congress or directive from the Supreme Court, I see no authority or reason for us to change course.

RANDOLPH, Circuit Judge, concurring:

I join the court's opinion in its application of *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), to deny this attorney-plaintiff attorney's fees. I do so without endorsing the "criteria" we have devised for determining whether, in FOIA cases generally, attorney's fees should be awarded. Maj. op. at 1288. Judge Wald thinks it significant that the four criteria are "deeply rooted" in the legislative history of FOIA. Concur. op. at 1293. I find it far more telling that those criteria were weeded out of the original Senate version of FOIA—where they would have had the binding force of law—and transplanted to the conference report—where they do not. Although we have applied these criteria in the past, they deserve another look. For instance, one of the factors is "the public benefit derived from the case." *Chesapeake Bay Found., Inc. v. United States Dep't of Agric.*, 11 F.3d 211, 216 (D.C.Cir.1993). Courts deciding an attorney's fees dispute are not in a position to make that sort of judgment objectively. One person's public good is often another person's public harm. Besides, FOIA plaintiffs do not sue in the public interest; if anyone represents "the public" in these cases it is the United States or the agency defending the action. Making eligibility for a fee award turn on "public benefit" has a nice ring, but it is not tied to any language or policy of FOIA. Once a FOIA plaintiff receives the information sought from the government, he has no obligation to share it with "the public," or with anyone else. What he plans to do with the documents has no bearing whatever on his right to receive them. I therefore cannot see why such a consideration should be relevant to whether he should recover attorney's fees. If the "public good" did matter, the fact that the plaintiff plans to use the information for his "commercial benefit," *id.*, should be a mark in favor of attorney's fees. Competition and better products and services promote the public good. But our precedents count commercial benefit as a strike against an award—unless, perhaps, the plaintiff happens to be a "news organization." *See, e.g., Tax Analysts v. Department of Justice*, 965 F.2d 1092, 1095, 1096 (D.C.Cir.

litigation." *Synar v. United States*, 670 F.Supp. 410, 416 (D.D.C.1987). As we noted in *Battles Farm Co. v. Pierce*, 806 F.2d 1098 (D.C.Cir.1986), *cert. denied*, 481 U.S. 1046, 107 S.Ct. 2176, 95 L.Ed.2d 832 (1987), "unlike other fee-shifting statutes that are designed solely to encourage private 'attorneys general' to bring meritorious litigation in the public interest ... the EAJA's purpose is somewhat different. It is designed to encourage small private plaintiffs and defendants to persevere against or resist the U.S. government if the government takes an unjustified litigating position." *Id.* at 1101.

1992). We have also said that when a litigant seeks disclosure "for personal motives, an award of attorney's fees is generally inappropriate." *Id.* at 1095. This too is baffling. I suppose that any individual bringing a lawsuit has "personal motives." On the other hand, it seems odd to attribute "personal motives" to a foundation or some other artificial entity. And so our law on attorney's fees in FOIA cases is skewed against real people and in favor of organizations. This makes no sense. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 1033 n. 19, 127 L.Ed.2d 455 (1994). What also makes no sense is our continued use of this multifactor, no weights assigned, test in the face of the different (and far simpler) standard supplied in the Equal Access to Justice Act, 28 U.S.C. § 2412. EAJA fits FOIA perfectly. It applies to cases in which the United States or an agency is a party and every FOIA case will be in that category. *Compare Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 259 (1st Cir.1986), refusing to borrow the EAJA standard in cases with private litigants on both sides of the dispute.

Judge Wald believes that "the purposes of the fee-shifting provisions of EAJA and of FOIA are different." Concur. op. at 1292–93 n.1. She distinguishes between the two on the ground that EAJA is narrower and not designed to encourage litigation. *See* concur. op. at 1292–93 n.1. Yet she would require FOIA plaintiffs to fulfill three additional criteria that do not apply to plaintiffs seeking fees under EAJA,[1] frequently making it *harder* to qualify for an attorney's fees award under FOIA than under EAJA. I find it more logical to join the First Circuit, which has concluded that there is "no fundamental difference" between the policies underlying EAJA's and FOIA's attorney's fees provisions. *Crooker v. EPA,* 763 F.2d 16, 17 (1st Cir.1985).

---

**1.** Under both EAJA and FOIA, courts look to the merit of the Government's litigating position in determining whether to award attorney's fees. *Compare* 28 U.S.C. § 2412(d)(1)(A) (A court shall award fees unless the "position of the United States was substantially justified.") *with* maj. op. at 1288 (The fourth factor to be weighed in determining whether fees should be awarded under FOIA is "whether the Government had a reasonable basis for withholding requested information.").